IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DWIGHT KEITH JACKSON, | ) | No. C 01-2194 SBA (pr) |
| Plaintiff, | ) | |
| v. | ) | **ORDER OF SERVICE** |
| | ) | |
| THE COUNTY OF ALAMEDA, SANTA RITA COUNTY JAIL, et al., | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Dwight Keith Jackson, a "civil detainee" at Atascadero State Hospital in Atascadero, filed this civil rights action pursuant to 42 U.S.C. § 1983.  He has been granted leave to proceed in forma pauperis.  Venue is proper in this district because a substantial part of the events giving rise to the action occurred at Alameda County (Santa Rita) Jail, which is located in this judicial district.  See 28 U.S.C. § 1391(b).

In an Order dated February 20, 2002, the Court dismissed the complaint with leave to amend. Plaintiff filed an amended complaint on March 27, 2002.

On May 27, 2004, the Court directed Plaintiff to file a notice of current address and intent to prosecute.  On June 9, 2004, Plaintiff notified the Court of his change of address and filed his Notice of Intent to Prosecute.

The Court now reviews the claims raised in the amended complaint and reconsiders whether Plaintiff states cognizable claims for relief with respect to each of his causes of action.  The facts discussed below are derived from the allegations in Plaintiff's original and amended complaints, which are taken a true and construed in the light most favorable to Plaintiff for purposes of the Court's initial review.  See Parks School of Business, Inc., v. Symington, 51 F.3d 1480, 1483 (9th Cir. 1995).

**STANDARD OF REVIEW**

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  In its review, the court must identify any cognizable claims and dismiss any claims that are

1  frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a

2  defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).

3  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that

4  a right secured by the Constitution or laws of the United States was violated, and

5  (2) that the alleged violation was committed by a person acting under the color of State law.  West v.

6  Atkins, 487 U.S. 42, 48 (1988).

7  Pro se pleadings are held to less stringent standards than formal pleadings drafted by lawyers

8  and must be liberally construed.  See Hughes v. Rowe, 449 U.S. 5, 9 (1980).

**BACKGROUND**

The following factual background is taken from the Court's Order dated February 20, 2002:

> Beginning January 3, 2000, Plaintiff was held in administrative segregation at Santa Rita Jail.  While in segregation, he developed high blood pressure, which reached as high as 200/160, and was given increasing doses of daily medication.  On several occasions he had attacks of very painful headaches, and he would push his emergency call button.  One technician regularly ignored such calls when he was on duty.  One day when that technician failed to respond, Plaintiff file a grievance against him.  The technician never responded to the grievance, nor did he submit the grievance for processing.

> On June 10, 2000, Plaintiff experienced severe headaches and hot flashes.  He pushed his emergency call button, but got no response after approximately one minute. Fearing he would be ignored again, Plaintiff panicked and pushed the button about fifteen to twenty times over the next five minutes.  Still receiving no response, Plaintiff asked the prisoner housed immediately to his right, in Cell #5, for help, and that prisoner pushed his call button a few times without receiving a reply.  The prisoner in Cell #7 then said that the button must be off because he also tried pushing his call button to help out Plaintiff, but received no response.  Plaintiff then tried to flag the floor deputies to get their attention, using a piece of paper that he pushed through a crack in his cell door. Deputies Zuniga and King acknowledged his flagging, but ignored his request for assistance.  Plaintiff then had to lie on the floor of his cell to attempt to cool down his body.

> About 30 minutes later, the prisoner housed in Cell #4, who was returning from a visit, stopped to look in on Plaintiff.  He asked why Plaintiff was lying on the floor and after Plaintiff explained, the prisoner immediately told Deputy King, who then finally came to look in on Plaintiff.  Plaintiff explained what was wrong and asked Deputy King why he had not responded when he tried to flag him.  Deputy King said, "I didn't know what you were calling for."  Plaintiff asked for a grievance form.  Deputy King contacted the nurse, who came and checked Plaintiff's blood pressure.  She said his pressure was normal, even though he consistently had high blood pressure readings during the previous five months and even though the next day his blood pressure reading was extremely high.  Plaintiff, however, took the nurse's word and lay down to try to sleep.

> Before he lay down, he pushed the call button again to be sure it was working. This time, he got an immediate response.  A woman ("Technician") said, "Yes, may I

2

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

help you?"  Plaintiff asked why she had not answered earlier.  She said, "I answered the button but no one said anything.  I just heard footsteps walking away."  Plaintiff argues that Technician should have been alarmed if Plaintiff was not able to respond and that her failure to follow up on his call with a visual check was extreme neglect.  Plaintiff alleges that Technician was simply trying to cover up for having left the intercom off by mistake.

When Deputy Zuniga learned that Plaintiff was filing a grievance, he trumped up charges against Plaintiff, in a further attempt to cover up for Technician's mistake.  On June 10, 2000, Plaintiff was charged with misuse of the intercom system.  Plaintiff requested a hearing and he named three prisoners (the maximum allowed) as witnesses.  On June 22, 2000, Plaintiff was assessed 15 days' loss of privileges as a disciplinary sanction.  Plaintiff filed a grievance on June 23, 2000, the day he received notice of the sanction.  He claimed that no disciplinary hearing had ever taken place.  In his complaint, Plaintiff alleges that no written report or tape recording was made of his hearing and that the hearing officer was a floor officer who had no decision-making power.

On June 28, 2000, Sgt. D. Barnhill denied Plaintiff's grievance.  He wrote that Deputy Johnson conducted a hearing on June 13, 2000, and that Plaintiff denied to Deputy Johnson that he had repeatedly pressing the intercom button.  Sgt. Barnhill also wrote that Plaintiff's witnesses had been interviewed and "they all stated that they had nothing further to add to the statement you made."  Plaintiff, however, alleges that these statements were false.  He alleges that he admitted repeatedly pressing the call button during his interview with Deputy Johnson and explained to the deputy why he had done so.  Plaintiff also attaches to his complaint a statement signed by Brian D. Roche, one of Plaintiff's named witnesses, which disputes Sgt. Barnhill's characterization of his statements to Deputy Johnson.  Mr. Roche writes that he told Deputy Johnson that he overheard Plaintiff ask the inmate in Cell #5 to contact the technician because he was feeling bad.  When that inmate said no one was answering, Mr. Roche took it upon himself to try to get a response by pushing his call button.  He also got no response, and he told Plaintiff that the call button must be broken.  He specifically denies that he told Deputy Johnson he had nothing to add to his report.

Plaintiff's grievance was denied at the highest level of review on July 12, 2000.  Plaintiff filed this action on June 6, 2001. . . .

Plaintiff seeks compensatory and punitive damages.

(February 20, 2002 Order at 1-3.)

//

//

**LEGAL CLAIMS**

**I.      Disciplinary Proceedings**

In his amended complaint, Plaintiff reasserts his claim that the manner in which Deputy Johnson investigated the disciplinary charges against him violated his procedural due process rights.  Plaintiff

3

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

alleges that on June 13, 2000, Deputy Johnson came to his cell and interviewed him about his alleged misuse of the intercom system.  Afterwards, Deputy Johnson interviewed Plaintiff's three witness separately.  Plaintiff alleges that Deputy Johnson claimed the interview was Plaintiff's Disciplinary Hearing.  Plaintiff claims that Deputy Johnson is a floor deputy and has no powers to make any disciplinary hearing decisions.  Moreover, Plaintiff charges Deputy Johnson with falsifying the record by misrepresenting statements made by himself and his witnesses.

After analyzing this claim in its February 20, 2002 Order, the Court concluded that Plaintiff raised a valid claim for the violation of his procedural due process rights by Deputy Johnson, who conducted Plaintiff's disciplinary "hearing."  (See February 20, 2002 Order at 4-8.)  Plaintiff exhausted his administrative remedies as to this claim by filing a grievance that challenged not only the disciplinary sanctions imposed against him, but also the alleged procedural violations in his disciplinary proceedings and by pursuing it to the highest level of review available to him.  See 42 U.S.C. § 1997e(a).  The Court further determined that because Plaintiff did not allege that he suffered a physical injury as a result of the due process violations in his disciplinary proceedings, he could not recover any compensatory damages for this claim.  Therefore, the Court found that his potential recovery on this claim was limited to nominal damages.

Because Plaintiff has reasserted this claim in his amended complaint, the Court finds that Plaintiff's allegations state a cognizable claim for relief against Deputy Johnson.

## II.     Deliberate Indifference to Serious Medical Needs

In its February 20, 2002 Order, the Court analyzed Plaintiff's deliberate indifference claim and found that because Plaintiff did not allege that any jail employee acted with deliberate indifference to his serious medical needs, he failed to state a cognizable Eighth Amendment claim.  (See February 20, 2002 Order at 8-9.)  The Court directed Plaintiff to reassert such a claim in an amended complaint only if he can in good faith allege that a particular defendant realized he had serious medical needs and acted in conscious disregard of those needs.

In his amended complaint, Plaintiff alleges that he had a serious medical need, which included acutely painful headaches and hot flashes, with an underlying condition of high blood pressure, and that

United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

a female technician ("Technician Jane Doe") and Deputies Zuniga and King, whom he flagged down, failed to respond.  However, Plaintiff fails to allege that these defendants  realized he had serious medical needs and acted in conscious disregard of those needs.  The Court finds that Plaintiff only alleges that they were negligent.  A claim of mere negligence or harassment related to medical problems is not enough to make out a violation of the Eighth Amendment.  See Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).  Because negligence alone does not give rise to a constitutional claim, Plaintiff fails to state a cognizable claim of deliberate indifference to his serious medical needs against Technician Jane Doe, Deputy Zuniga and Deputy King.

### III.     Retaliation

In his amended complaint, Plaintiff alleges that Deputy Zuniga learned from Deputy King that Plaintiff was filing a grievance against their deliberate indifference to his serious medical needs when they refused to respond to his request for assistance on June 10, 2000.  Plaintiff claims that Deputy Zuniga then filed false charges of misuse of the intercom system against him.

In its February 20, 2002 Order, the Court analyzed Plaintiff's retaliation claim and found that Plaintiff's allegations support the inference that Deputy Zuniga retaliated against him by filing false charges for exercising his right to file a jail grievance.  (See February 20, 2002 Order at 9-11.)

A prisoner has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest.  See Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989); Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986), cert. denied, 485 U.S. 982 (1988).  As long as a prisoner is afforded procedural due process in the disciplinary hearing, allegations of a fabricated charge fail to state a claim under § 1983.  See Hanrahan v. Lane, 747 F.2d 1137, 1140-41 (7th Cir. 1984).  However, if fabricating charges against an inmate infringes on a substantive constitutional right, e.g. the right of access to the courts, the mere presence of procedural protections cannot defeat a claim for denial of the substantive constitutional right.  See, e.g., Franco v. Kelly, 854 F.2d 584, 588-90 (2d Cir. 1988) (filing of false charges against prisoner in retaliation for his cooperation with state investigators constituted violation of prisoner's substantive constitutional rights).  Similarly, a claim that false disciplinary charges were filed in retaliation for a

United States District Court

For the Northern District of California

grievance submitted under established procedures is actionable under § 1983. See Sprouse, 870 F.2d at 452.

Therefore, because Plaintiff alleges that he suffered harm as a result of these false charges (the disciplinary sanction), he states a cognizable claim for relief. See Gilbrook v. City of Westminster, 177 F.3d 839, 853-56 (9th Cir. 1999) (holding that liability for retaliation may be placed on a subordinate who sets in motion a series of acts which he knows or reasonably should know will cause a superior to inflict constitutional injury).

Retaliation claims are not subject to § 1997e(e) physical injury requirement. See Canell v. Lightner, 143 F.3d 1210, 1213 (9th Cir. 1998).  Therefore, the Court determined that Plaintiff may recover compensatory damages if he prevails on this claim.

Finally, the Court found that Plaintiff has exhausted his administrative remedies as to this claim, because he specifically alleged in his jail grievance that Deputy Zuniga "trumped up this phony charge" when he "thought that I was going to grievance [sic] [the incident]."

Because Plaintiff reasserts this claim for retaliation against Deputy Zuniga in his amended complaint, the Court finds that it is cognizable in this civil rights action.

Plaintiff also alleges that the following defendants were involved in the implementation of the unjustified disciplinary sanction, which was the basis for the retaliation claim involving Deputy Zuniga: 1) Deputy Johnson by conducting the "Disciplinary Hearing;" 2) Sergeant Harrison by being in a decision-making capacity and failing to correct the injustice upon a civil detainee at the first level of the grievance procedure (see Pl.'s Ex. C1-3); 3) Sergeant D. Barnhill[1] by drafting the Inmate Grievance Response and denying Plaintiff's grievance (see Pl.'s Ex. D);    4) Lt. P. Krimm, a superior officer, by denying the appeal of the grievance; 5) Lt. Mather, the Watch Commander, by recommending the punishment of 30-days loss of privileges; and 6) Lt. T. Moore, the Commanding Officer, by being the final decision-maker and amending the punishment to 15-days loss of privileges.  The Court finds these allegations present a cognizable claim that the aforementioned defendants participated in a retaliatory conspiracy.

---

[1]  In his amended complaint, Plaintiff incorrectly spells Sergeant Barnhill's name as "Burnhill."  The Court notes that this defendant's name is spelled "Barnhill."  (See Pl.'s Ex. D.)

United States District Court
For the Northern District of California

1   Therefore, liberally construed, Plaintiff's claims against those defendants are cognizable in this civil rights

2   action.

3          Plaintiff also names Disciplinary Deputy John Doe as among the defendants who participated in

4   retaliatory conspiracy "by enacting the punishment on Plaintiff."  However, Plaintiff has not alleged facts

5   which, if true, would support a finding of retaliation against Disciplinary Deputy John Doe.  If Plaintiff is

6   able to allege in good faith facts that are subject to proof and would establish a claim against

7   Disciplinary Deputy John Doe he may seek leave to amend his complaint.

8   **IV.    Failure to Process Grievance**

9          Plaintiff alleges in his amended complaint that prior to June 10, 2000, a male technician

10  ("Technician John Doe") failed to respond to Plaintiff's call using the Medical Emergency Only button.

11  Plaintiff claims that Technician John Doe refused to give his name to Plaintiff.  Plaintiff alleges that he

12  filed a grievance using the name, "Technician," and gave it to the floor deputy, Deputy Matteo.  Deputy

13  Matteo assured Plaintiff that he delivered the grievance to Technician John Doe.  Plaintiff claims that

14  Technician John Doe never submitted his grievance for processing.  Direct interference with a prisoner's

15  access to a prison grievance procedure violates the prisoner's right of access to the courts.  Bradley v.

16  Hall, 64 F.3d 1276, 1279 (9th Cir. 1995).

17         In its February 20, 2002 Order, the Court dismissed this claim because Plaintiff did not allege

18  that he exhausted his administrative remedies as to this claim.  (See February 20, 2002 Order at 12.)

19  The Court directed Plaintiff to assert the claim in an amended complaint if he can in good faith allege

20  exhaustion.  However, Plaintiff has not alleged that he has fully exhausted this claim.  Therefore, the

21  Court finds that Plaintiff fails to state a cognizable claim of direct interference with a prisoner's access to

22  a prison grievance procedure against Technician John Doe.

23

24  **V.    Proper Defendants**

25         In its February 20, 2002 Order, the Court noted that in the caption of his complaint, Plaintiff

26  named only "The County of Alameda and Santa Rita County Jail" as defendants.  On page three of the

27  complaint form, where he was asked to name his defendants, he adds the phrase "Staff

28  Deputies/Technician."  Therefore, the Court granted Plaintiff leave to amend to name his intended

1    defendants in the caption of an amended complaint.  See Barsten v. Dep't of the Interior, 896 F.2d 422,

2    423-24 (9th Cir. 1990).  In his amended complaint, Plaintiff names the following as defendants in this

3    action: the County of Alameda, Santa Rita Jail, Sheriff Charles Plummer, Technician John Doe,

4    Technician Jane Doe, Deputy King, Deputy Zuniga, Deputy Johnson, Disciplinary Deputy John Doe,

5    Sergeant Harrison, Sergeant Barnhill, Lt. P. Krimm, Lt. Mather, and Lt. Moore.

### A.    Municipal Liability

Plaintiff names the County of Alameda, the Santa Rita Jail, and Sheriff Charles Plummer as

municipal defendants in this action.  Local governments and local government agencies are "persons"

subject to liability under § 1983 where an official policy or custom causes a constitutional tort.  See

Monell v. Dep't of Social Servs., 436 U.S. 658, 690 (1978); see also Shaw v. Cal. Dep't of Alcoholic

Beverage Control, 788 F.2d 600, 604-05 & n.1, 610-11 (9th Cir. 1986) (holding that county sheriffs

department is a public entity under California law and may therefore be sued in federal court, subject to

the limitations on imposing liability on a municipality).  They may not be held vicariously liable for the

unconstitutional acts of their employees under the theory of respondeat superior.  See Board of County

Comm'rs v. Brown, 520 U.S. 397, 403 (1997); Monell, 436 U.S. at 691; Fuller v. City of Oakland, 47

F.3d 1522, 1534 (9th Cir. 1995).  Rather, to impose municipal liability under § 1983 for a violation of

constitutional rights, a Plaintiff must show: (1) that the Plaintiff possessed a constitutional right of which

he or she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate

indifference to the Plaintiff's constitutional rights; and (4) that the policy is the moving force behind the

constitutional violation.  See Plumeau v. School Dist. #40 County of Yamhill, 130 F.3d 432, 438 (9th

Cir. 1997).  Liability based on a municipal policy may be satisfied one of three ways:

> (1) by alleging and showing that a city or county employee committed the alleged constitutional violation under a formal governmental policy or longstanding practice or custom that is the customary operating procedure of the local government entity,
>
> (2) by establishing that the individual who committed the constitutional tort was an official with final policymaking authority and that the challenged action itself was an act of official governmental policy which was the result of a deliberate choice made from among various alternatives, or
>
> (3) by proving that an official with final policymaking authority either delegated policymaking authority to a subordinate or ratified a subordinate's unconstitutional decision or action and the

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    basis for it.

2    See Fuller, 47 F.3d at 1534; Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1992).  A local

3    government may also be liable for constitutional violations resulting from its failure to supervise, monitor

4    or train, but only where the inadequacy of said supervision, monitoring or training amounts to deliberate

5    indifference to the rights of the people with whom the local government comes into contact.  See City of

6    Canton v. Harris, 489 U.S. 378, 388 (1989); Van Ort v. Estate of Stanewich, 92 F.3d 831, 835 (9th

7    Cir. 1996); Mackinney v. Nielsen, 69 F.3d 1002, 1010 (9th Cir. 1995); Davis v. City of Ellensburg,

8    869 F.2d 1230, 1235 (9th Cir. 1989).

9            In its Order dated February 20, 2002, the Court found that Plaintiff did not allege a basis for

10   holding the County of Alameda or the Santa Rita Jail liable for the constitutional violations discussed

11   above.  (See February 20, 2002 Order at 12-13).  Therefore, the Court dismissed with leave to amend

12   his claims against these municipal defendants.  The Court directed Plaintiff to reassert the claims in an

13   amended complaint if he can in good faith allege facts establishing a basis for municipal liability.  Plaintiff

14   has failed to do so in his amended complaint.  Plaintiff has also failed to allege in his amended complaint

15   a basis for holding Sheriff Charles Plummer, a newly-named municipal defendant in this action, liable for

16   the constitutional violations discussed above.  Therefore, the following municipal defendants are

17   dismissed from this action: the County of Alameda, the Santa Rita Jail, and Sheriff Charles Plummer.

18   **B.        Individual Defendants**

19           As noted above, Plaintiff states cognizable claims for relief against Deputy Zuniga, Deputy

20   Johnson, Sergeant Harrison, Sergeant Barnhill, Lt. P. Krimm, Lt. Mather, and Lt. Moore.

21           The Court has determined that Deputy King and Technician Jane Doe are named only with

22   respect to Plaintiff's deliberate indifference claim, which is not a cognizable claim for relief under

23   § 1983.  Technician John Doe is named only with respect to Plaintiff's claim of direct interference with a

24   prisoner's access to a prison grievance procedure, which is also not a cognizable claim for relief under

25   § 1983.  Finally, Plaintiff's claim of a retaliatory conspiracy  against Disciplinary Deputy John Doe is not

26   a cognizable claim for relief under § 1983.   Therefore, Deputy King, Technician John Doe, Technician

27

28   Jane Doe, and Disciplinary Deputy John Doe are dismissed from this action.

United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**VI.     Discrepancy in Plaintiff's Name**

In its February 20, 2002 Order, the Court directed  Plaintiff to affirmatively state in his amended

complaint that he is the same person as the inmate James Johnson referenced in the exhibits, and he

should briefly explain the discrepancy in the names. (<u>See</u> February 20, 2002 Order at 14.)  In his

amended complaint, Plaintiff states that he was previously convicted of two first degree burglaries in the

city of Berkeley where he used the alias, "James Johnson."  Therefore, Plaintiff states that jail officials

and the Santa Rita Jail have chosen to continue using this name for convenience.

//

//

**CONCLUSION**

For the foregoing reasons, the Court orders as follows:

1.      Plaintiff's claim against Deputy Johnson for due process violations is  COGNIZABLE

claims under § 1983.

2.      Plaintiff's claim against Deputy Zuniga for retaliation and against Deputy Johnson,

Sergeant Harrison, Sergeant Barnhill, Lt. P. Krimm, Lt. Mather, and Lt. Moore for retaliatory

conspiracy are COGNIZABLE claims under § 1983.

3.      All Defendants other than those named in paragraphs 1 or 2 have not been linked

adequately or at all to Plaintiff's cognizable claims and are hereby DISMISSED from this action.

4.      The Clerk of the Court shall issue summons and the United States Marshal shall serve,

without prepayment of fees, copies of (1) the amended complaint and all attachments thereto

(Docket no. 6), (2) the Court's February 20, 2002 Order (Docket no. 4), and (3) this Order upon: **1)

Deputy Johnson; 2) Deputy Zuniga; 3) Sergeant Harrison; 4) Sergeant D. Barnhill; 5) Lt. P.

Krimm; 6) Lt. Mather; and 7) Lt. T. Moore.**  The Clerk shall also mail copies of these documents to

the Attorney General of the State of California.  Additionally, the Clerk shall serve a copy of this Order

on Plaintiff.

5.      In order to expedite the resolution of this case, the Court orders as follows:

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

      a.     Defendants shall answer the complaint in accordance with the Federal Rules of Civil Procedure.  In addition, no later than **thirty (30) days** from the date their answer is due, Defendants shall file a motion for summary judgment or other dispositive motion.  The motion shall be supported by adequate factual documentation and shall conform in all respects to Federal Rule of Civil Procedure 56.  If Defendants are of the opinion that this case cannot be resolved by summary judgment, they shall so inform the Court prior to the date their summary judgment motion is due.  All papers filed with the Court shall be promptly served on Plaintiff.

      b.     Plaintiff's opposition to the dispositive motion shall be filed with the Court and served on Defendants no later than **forty-five (45) days** after the date on which Defendants' motion is filed.  The Ninth Circuit has held that the following notice should be given to plaintiffs:

> The defendants have made a motion for summary judgment by which they seek to have your case dismissed.  A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.
>
> Rule 56 tells you what you must do in order to oppose a motion for summary judgment.  Generally, summary judgment must be granted when there is no genuine issue of material fact--that is,  if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case.  When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says.  Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial.  If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you.  If summary judgment is granted in favor of defendants, your case will be dismissed and there will be no trial.

See <u>Rand v. Rowland</u>, 154 F.3d 952, 963 (9th Cir. 1998) (en banc). Plaintiff is advised to read Rule 56 of the Federal Rules of Civil Procedure and <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986) (party opposing summary judgment must come forward with evidence showing triable issues of material fact on every essential element of his claim).  Plaintiff is cautioned that because he bears the burden of proving his allegations in this case, he must be prepared to produce <u>evidence</u> in support of those allegations

United States District Court

For the Northern District of California

when he files his opposition to Defendants' dispositive motion.  Such evidence may include sworn

declarations from himself and other witnesses to the incident, and copies of documents authenticated by

sworn declaration.  Plaintiff is advised that if he fails to submit declarations contesting the version of the

facts contained in Defendants' declarations, Defendants' version may be taken as true and the case may

be decided in Defendants' favor without a trial.  Plaintiff will not be able to avoid summary judgment

simply by repeating the allegations of his complaint.

c.      If Defendants wish to file a reply brief, they shall do so no later than **fifteen**

**(15) days** after the date Plaintiff's opposition is filed.

d.      The motion shall be deemed submitted as of the date the reply brief is due.  No

hearing will be held on the motion unless the Court so orders at a later date.

6.      Discovery may be taken in accordance with the Federal Rules of Civil Procedure.

Leave of Court pursuant to Rule 30(a)(2) is hereby granted to Defendants to depose Plaintiff and any

other necessary witnesses confined in prison.

7.      All communications by Plaintiff with the Court must be served on Defendants, or their

counsel once counsel has been designated, by mailing a true copy of the document to Defendants or

their counsel.

8.      It is Plaintiff's responsibility to prosecute this case.  Plaintiff must keep the Court

informed of any change of address and must comply with the Court's orders in a timely fashion.  Failure

to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of

Civil Procedure 41(b).

9.      Extensions of time are not favored, though reasonable extensions will be granted.

However, the party making a motion for an extension of time is not relieved from his or her duty to

comply with the deadlines set by the Court merely by having made a motion for an extension of time.

The party making the motion must still meet the deadlines set by the Court until an order addressing the

motion for an extension of time is issued.  Any motion for an extension of time must be filed no later than

**fifteen (15) days** prior to the deadline sought to be extended.

IT IS SO ORDERED.

DATED:6/29/05

s/Saundra Brown Armstrong
SAUNDRA BROWN ARMSTRONG
United States District Judge

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA**

INSTRUCTIONS FOR PAYMENT OF PRISONER'S FILING FEE

The prisoner shown as the Plaintiff or petitioner on the attached order has filed a civil action <u>in forma pauperis</u> in this court and owes to the court a filing fee.  Pursuant to 28 U.S.C. § 1915, the fee is to be paid as follows:

    The initial partial filing fee listed on the attached order should be deducted by the prison trust account office from the prisoner's trust account and forwarded to the clerk of the court as the first installment payment on the filing fee.  This amount is twenty percent of the greater of (a) the average monthly deposits to the prisoner's account for the 6-month period immediately preceding the filing of the complaint/petition or (b) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint/petition.

    Thereafter, on a monthly basis, 20 percent of the preceding month's income credited to the prisoner's trust account should be deducted and forwarded to the court each time the amount in the account exceeds ten dollars ($10.00).  The prison trust account office should continue to do this until the filing fee has been paid in full.

If the prisoner does not have sufficient funds in his/her account to pay the initial partial filing fee, the prison trust account office should forward the available funds, and carry the balance forward each month until the amount is fully paid.

If the prisoner has filed more than one complaint, (s)he is required to pay a filing fee for each case.  The trust account office should make the monthly calculations and payments for each case in which it receives an order granting <u>in forma pauperis</u> and these instructions.

**The prisoner's name and case number must be noted on each remittance.**  The initial partial filing fee is due within thirty days of the date of the attached order.  Checks should be made payable to Clerk, U.S. District Court and sent to Prisoner Accounts Receivable, U.S. District Court, 450 Golden Gate Avenue, Box 36060, San Francisco, CA 94102.

cc:    Plaintiff/Petitioner
       Finance Office

**United States District Court**
For the Northern District of California